IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, )<br>800 K Street N.W., Suite 1000 )<br>Washington, D.C. 20001, )<br>        )<br>    Plaintiff, )<br>        )<br>    v. )<br>        )<br>RUSSELL VOUGHT, in his official capacity )<br>as Acting Director of the )<br>Consumer Financial Protection Bureau, )<br>1700 G Street, N.W. )<br>Washington, D.C.  20552 )<br>        )<br>        )<br>    Defendant. )<br>_____ ) | Case No. 1:25-cv-381<br><br>COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

INTRODUCTION

Plaintiff National Treasury Employees Union (NTEU) represents employees across thirty-seven federal agencies and departments, including all bargaining unit employees in the Consumer Financial Protection Bureau (CFPB).

NTEU brings this action to challenge the Executive Branch's ongoing effort to dismantle the CFPB. Congress created the CFPB in response to a financial crisis and assigned the CFPB its critical mission of protecting the American consumer. The efforts of Defendant Russell Vought, the CFPB's Acting Director, to bring the CFPB's statutorily prescribed work to a halt violate separation of powers principles.

## JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## VENUE

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

## PARTIES

3. Plaintiff NTEU is an unincorporated association with its principal place of business at 800 K Street, N.W., Washington, D.C. 20001. NTEU is, pursuant to Title VII of the Civil Service Reform Act, Public Law No. 95-454, 92 Stat. 1111, the exclusive bargaining representative of employees in thirty-seven federal departments and agencies, including the CFPB.

4. Defendant Russell Vought is head of the Office of Management and Budget and the Acting Director of the CFPB.

## STATEMENT OF CLAIMS

I.  Congress's Significant Power to Shape the Executive Branch

   A. Congress's Plenary Authority over the Existence, Mission, and Funding of Executive Agencies

5. The Framers intended for Congress to be the most powerful branch of the federal government. The legislative power that the Founders envisioned "necessarily predominates" (The Federalist No. 51 (J. Madison)) and has a "tendency . . . to absorb every other" (The Federalist No. 71 (A. Hamilton)).

6. Congress can create or destroy executive branch agencies and dictate their missions. "To Congress under its legislative power is given the establishment of offices … [and] the determination of their functions and jurisdiction." *Myers v.*

*United States*, 272 U.S. 52, 129 (1926). *Accord Buckley v. Valeo*, 424 U.S. 1, 138 (1976) (discussing Congress's ability to create or remove federal agencies through the Necessary & Proper Clause). Congress thus "control[s]" the very "existence of executive offices." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 500 (2010).

### B. Congress's Creation of the CFPB to Protect the American Public

7. Congress created the CFPB after the great recession of 2007-08. Congress assigned the CFPB the mission of supporting and protecting American consumers in the financial marketplace. To fulfill its statutory mission, CFPB monitors financial markets for risks to consumers; enforces consumer finance law; investigates consumer complaints; and writes rules to protect consumers from unfair, deceptive, or abusive practices in the financial sector. Pub. L. 111–203 (2010). *See* https://www.consumerfinance.gov/about-us/the-bureau/.

8. The CFPB has supervisory authority over depository institutions with $10 billion or more in assets such as banks, thrifts, and credits unions; and over non-depository entities such as mortgage originators and servicers, payday lenders, and private student lenders. CFPB also supervises consumer reporting, consumer debt collection and foreclosure, student loan servicing, international money transfer, and automobile financing. *See* https://www.consumerfinance.gov/compliance/supervision-examinations/institutions/.

9. The CFPB's workforce has worked tirelessly to do the job that Congress assigned to it. As of December 2024, CFPB has obtained more than $21 billion in monetary compensation, principal reductions, cancelled debts, and other consumer relief as part of its enforcement and supervisory work. Through its enforcement activities, CFPB has collected approximately $363 million associated with harm to American servicemembers and veterans. And CFPB has collected more than $5 billion from companies and individuals that violated the law, which the Bureau deposits into a victim relief fund. *See* https://www.consumerfinance.gov/about-us/the-bureau/.

## II.  The Trump Administration's Attempts to Dismantle the CFPB

10. On February 7, 2025, Elon Musk "posted 'CFPB RIP' with a tombstone emoji on his social media site X [ ], raising the prospect that the consumer protection agency could be the next U.S. Agency for International Development, which he has said should 'die.'" Holly Otterbein and Katy O'Donnell, "'CFPB RIP': Elon Musk is Already Descending on His Next Target," Politico.com, https://www.politico.com/news/2025/02/07/elon-musk-team-cfpb-00203119.

11. In a post on X on February 8, 2025, Defendant Vought "said he had notified the Federal Reserve that the CFPB . . . will not take 'its next draw of unappropriated funding,' saying the funding 'is not "reasonably necessary" to carry out its duties.'" Sarah Fortinsky, "Vought Seeks to Halt Action at CFPB," The Hill.com, https://thehill.com/homenews/administration/5134732-cfpb-budget-russia-vought/.

12. Defendant Vought has also directed the CFPB workforce "to 'cease all supervision and examination activity,' 'cease all stakeholder engagement,' pause all pending investigations, not issue any public communications and pause 'enforcement actions.'" *Id.*

13. Defendant Vought has also ordered that "the agency's Washington headquarters [] be closed for the coming week." Douglas Gillison, "Consumer Protection Agency CFPB Neutralized by Trump's New Chief," Reuters (Feb. 9, 2025) https://www.reuters.com/world/us/trumps-acting-cfpb-chief-halts-all-supervision-companies-2025-02-09/.

14. CFPB employees have been placed in questionable status as they have been directed not to work but they have also not been formally placed on any authorized type of leave.

15. It is substantially likely that these initial directives are a precursor to a purge of CFPB's workforce, which is now prohibited from fulfilling the agency's statutory mission.

### III. The Effect of Defendant's Attempt to Dismantle the CFPB on NTEU and Its Members

16. NTEU brings this action in its associational capacity on behalf of its NTEU members at the CFPB, as well as in its institutional capacity on behalf of itself.

17. NTEU members at the CFPB are no longer able to do the supervision and enforcement work that they came to the CFPB to do for the American people. NTEU members at the CFPB are employed in a variety of professions. NTEU

members Jasmine Hardy and Nelle Rohlich are employed as an Examiner and Enforcement Attorney, respectively. Because of Defendant Vought's directive, NTEU members like Ms. Hardy and Ms. Rohlich cannot perform their duties examining financial institutions, investigating financial institutions, and initiating enforcement actions. Because Defendant Vought is preventing them and other NTEU members from doing their work for the CFPB and refusing to take the CFPB's next draw of funding, it is substantially likely that they will lose their jobs and suffer financial harm.

18. Because of Defendant Vought's directive and his shuttering of the Bureau's headquarters for at least a week, CFPB employees are apprehensive about their employment and their futures.

19. NTEU also brings this action in its institutional capacity. There is a substantial likelihood of reductions to the CFPB workforce because Defendant Vought is preventing employees from doing their statutorily mandated work and refusing to use additional funds that are available to the CFPB. Those reductions in the CFPB's workforce will very likely include NTEU's members and, in turn, decrease NTEU's dues revenue from its members at the CFPB. Even if these individuals remain NTEU members as former federal employees after they are fired, NTEU will lose money because their dues rates will be significantly reduced.

20. NTEU is expending significant time and resources responding to the many concerns that its CFPB members are raising about their future and the future of the Bureau.

## CAUSE OF ACTION

**Count I:  The Executive Branch's actions to dismantle CFPB violate separation of powers principles.**

21. Plaintiff reasserts the allegations contained in paragraphs 1 through 20 of this complaint as though contained herein.

22. Congress created the CFPB and assigned it a critical portfolio.

23. Defendant Vought's decision to prevent the CFPB from drawing down more funding and ordering the CFPB's workforce to cease all supervision and examination activity reflects an unlawful attempt to thwart Congress's decision to create the CFPB to protect American consumers.

24. Defendant Vought's actions thus violate separation of powers principles because they undermine Congress's authority to set and fund the missions of the CFPB.

## REQUEST FOR RELIEF

Wherefore, Plaintiff requests judgment against Defendant Vought:

A. Declaring that Defendant Vought's directive to the CFPB's employees to stop their supervision and enforcement work is unlawful;

B. Enjoin Defendant Vought from further attempts to halt the CFPB's supervision and enforcement work;

C. Ordering Defendant Vought to pay reasonable attorneys' fees and costs; and

D. Ordering such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Julie M. Wilson

---

JULIE M. WILSON
General Counsel
D.C. Bar No. 482946

/s/ Paras N. Shah

---

PARAS N. SHAH
Deputy General Counsel
D.C. Bar No. 983881

/s/ Allison C. Giles

---

ALLISON C. GILES
Assistant Counsel
D.C. Bar No. 439705

NATIONAL TREASURY
EMPLOYEES UNION
800 K Street, N.W., Suite 1000
Washington, D.C. 20001
Tel: (202) 572-5500
Fax: (202) 572-5645
julie.wilson@nteu.org
paras.shah@nteu.org
allie.giles@nteu.org

February 9, 2025                    Attorneys for Plaintiff NTEU